Argued and submitted August 8, affirmed November 16, 2005

In the Matter of the Compensation of
Janet L. Bowen, Claimant.

Janet L. BOWEN,
*Petitioner,*

*v.*

FRED MEYER STORES,
*Respondent.*

03-01249; A126344

123 P3d 367

James E. Bailey, III, argued the cause for petitioner. With him on the briefs was Daniel M. Spencer LLC.

Deborah L. Sather argued the cause for respondent. With her on the brief was Sather, Byerly & Holloway.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Breithaupt, Judge pro tempore.

HASELTON, P. J.

## HASELTON, P. J.

Claimant seeks review of an order of the Workers' Compensation Board, determining that she failed to establish the compensability of her left shoulder impingement and the arthroscopic surgery that she had to correct the problem. We review legal issues for errors of law and factual issues for substantial evidence. ORS 183.482(8)(a), (c). Substantial evidence supports a finding when the record, viewed as a whole, permits a reasonable person to make that finding. ORS 183.482(8)(c); *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990). We conclude that the board's findings are supported by substantial evidence and affirm.

Claimant, who works for employer as a cashier, began to experience left shoulder and arm pain, for which she sought medical treatment. The condition was initially diagnosed as "probably impingement/subacromial bursitis secondary to overuse." Claimant filed a workers' compensation claim, and employer accepted the claim as a nondisabling shoulder strain.

Claimant continued to experience symptoms. Dr. Walther, claimant's treating physician, diagnosed chronic tendinitis and shoulder impingement due to repetitive use of the shoulder at work. She noted that an MRI "did show a type III acromion, which is a congenital condition but is not the cause of the condition. It may contribute, but the need for treatment (*i.e.*, surgery) is the work related injury."[1] Walther ultimately performed surgery on claimant's shoulder, and found adhesions of the capsule in the glenohumeral joint and impingement in the subacromial area. She shaved a hook projection from claimant's acromion to relieve the impingement.

---

[1] The acromion is

"[t]he lateral end of the spine of the scapula which projects as a broad flattened process overhanging the glenoid fossa; it articulates w. the clavical and gives attachment to part of the deltoid and trapezius muscles. Its lateral border is a palpable landmark ('the point of the shoulder')."

*Stedman's Medical Dictionary* 18 (27th ed 2000). The record does not provide a definition of types I, II, and III acromion.

Walther subsequently concurred in a statement from the insurer that the removal of the hook projection of the acromion had resulted in a "type I" acromion and that claimant would be able to return to her work without further recurrence of the impingement. Walther expressed the opinion that repetitive work activities were the major contributing cause of the development of the impingement. She considered, but did not attribute any significance to, preexisting conditions or abnormalities. In response to inquiries by employer's insurer, Walther "agreed" that, in a conference with the insurer's attorney, "[w]e discussed the impact of the Type II/III acromion and the work activities. You noted again that the work activities were the major cause of the development of the impingement. However, you indicated that during surgery [claimant's] acromion was shaved so that she essentially had a Type I acromion once surgery was completed."

Dr. Yodlowski examined claimant on behalf of employer. In Yodlowski's view, claimant had experienced an acute episode of tendinitis due to overuse activities at work, but that condition had resolved. Yodlowski believed that claimant's shoulder impingement was due to age-related degeneration and her congenital type III acromion. Employer denied claimant's claim for the surgery, and claimant requested a hearing.

Claimant relied on Walther's opinion in support of the compensability of her condition as an occupational disease. In upholding employer's denial of the shoulder impingement and corrective surgery, the administrative law judge and, ultimately, the board, identified what they perceived to be an inconsistency in Walther's opinion: As the board explained it, on the one hand, Walther had expressed the view that no preexisting condition or congenital abnormality had contributed to claimant's impingement; on the other hand, Walther had concurred in the insurer's statement that the shaving of the hook from claimant's type III acromion had given claimant a type I acromion, so as to allow claimant to return to work without further recurrence of the impingement. In the board's view, Walther's description of the effect of the surgical treatment of the shoulder was an implicit acknowledgment that the type III acromion had contributed to

claimant's impingement condition. Consequently, the board believed that it was necessary for Walther to further explain her conclusion that no preexisting or congenital abnormality had contributed to the cause of the impingement. The board concluded that, in the absence of such an explanation, Walther's opinion was not persuasive and, accordingly, claimant had failed to satisfy her burden of proof.

In her petition for judicial review, claimant continues to assert that Walther's opinion supports the compensability of the claim. In particular, claimant contends that even assuming, as the board reasoned, that there was a failure on Walther's part to explain the contribution of claimant's type III acromion to claimant's shoulder impingement, that failure does not affect the persuasiveness of Walther's opinion. That is so, claimant asserts, because the type III acromion is not a "preexisting condition" as defined in ORS 656.005(24) and, thus, is not the type of condition that must be considered when weighing factors that contribute to the cause of an occupational disease.

Employer counters that, if the evidence shows that the type III acromion contributed to the cause of the impingement, it is properly treated as a contributing cause, whether or not it is a "preexisting condition," *per se*. Thus, employer asserts, the board correctly determined that Walther's failure to address the relative contribution of the type III acromion rendered her opinion not persuasive.

■    To establish compensability of her claim for an occupational disease, claimant must prove that employment conditions were the major contributing cause of her left shoulder condition. ORS 656.802 provides, in part:

"(1)(a)   As used in this chapter, 'occupational disease' means any disease or infection arising out of and in the course of employment caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death, including:

"* * * * *

"(C) Any series of traumatic events or occurrences which requires medical services or results in physical disability or death.

"* * * * *

"(2)(a) The worker must prove that employment conditions were the major contributing cause of the disease.

"* * * * *

"(e) Preexisting conditions shall be deemed causes in determining major contributing cause under this section."

For purposes of an occupational disease, ORS 656.005(24)(b) defines a "preexisting condition" as

"any injury, disease, congenital abnormality, personality disorder or similar condition that contributes to disability or need for treatment and that precedes the onset of the claimed occupational disease, or precedes a claim for worsening in such claims pursuant to ORS 656.273 or 656.278."

The first question raised in this case is whether, as a matter of law, claimant's type III acromion is a condition that is properly considered in weighing the causes of her impingement condition. As claimant understands ORS 656.802, it would permit consideration of claimant's type III acromion in the weighing of causes contributing to her shoulder impingement only if the acromion were a "preexisting condition" as defined in ORS 656.005(24). In claimant's view, her type III acromion is not a legally cognizable "preexisting condition" because it is not a "disease, congenital abnormality or personality disorder." Rather, she asserts, the shape of her shoulder bone is an inconsequential personal factor of no more legal relevance to the cause of her shoulder impingement than would be claimant's blood type or eye color.

Claimant's position depends on a false first premise. The universe of potential contributing causes for purposes of assessing the major contributing cause of a condition in the context of an occupational disease claim is *not* limited to "preexisting conditions" as defined in ORS 656.005(24)(b). Rather, it is well settled that, in determining the major contributing cause of a condition in the context of an occupational disease claim, the relative contribution of *all contributing causes* must be considered, and persuasive medical

opinion must explain why a particular work exposure or injury contributes more to the claimed condition than all other causes or exposures combined. *Dietz v. Ramuda,* 130 Or App 397, 882 P2d 618 (1994), *rev dismissed,* 321 Or 416 (1995); *Jackson County v. Wehren,* 186 Or App 555, 559, 63 P3d 1233 (2003) (citing representative cases); *Liberty Northwest Ins. Corp. v. Spurgeon,* 109 Or App 566, 569, 820 P2d 851 (1991), *rev den,* 313 Or 210 (1992) ("All *causes* of a disease, as opposed merely to a susceptibility or predisposition, must be considered in determining which, if any, was the major contributing cause." (Emphasis in original.)).

In sum, if claimant's type III acromion contributed to the claimed condition, its relative contribution must be considered, regardless of whether it was a "preexisting condition" as defined in ORS 656.005(24). The board expressly found that claimant's type III acromion actually contributed to her need for treatment. Because substantial evidence supports that finding, as well as the board's determination that Walther failed to address the relative contribution of the type III acromion, the board properly determined that Walther's opinion as to major causation was not persuasive.[2]

Affirmed.

---

[2] Given our conclusion in that regard, we need not determine whether the type III acromion would otherwise satisfy the definition of a "preexisting condition" in ORS 656.005(24). Similarly, in light of our agreement with the board's treatment of Walther's opinion, we do not address claimant's contention that Yodlowski improperly considered claimant's "age" in determining that work was not the major contributing cause of the shoulder impingement.