Argued and submitted March 17, affirmed August 30, 2006

In the Matter of the Compensation of
Sandra D. Obie, Claimant.

MULTNOMAH COUNTY,
*Petitioner,*

*v.*

Sandra D. OBIE,
*Respondent.*

03-06460; A125845

142 P3d 496

Jerald P. Keene argued the cause and filed the briefs for petitioner.

Daniel Snyder argued the cause and filed the briefs for respondent.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum,* Judges.

_____

* Rosenblum, J., *vice* Landau, J.

ARMSTRONG, J.

**ARMSTRONG, J.**

Employer seeks judicial review of an order of the Workers' Compensation Board affirming an administrative law judge (ALJ) and holding that claimant's mental disorder is a compensable occupational disease. We review the board's order for substantial evidence and errors of law, ORS 183.482(8)(a), (c), and affirm.

Claimant, a corrections officer for Multnomah County, learned of the suicide of a coworker and close personal friend while visiting the coworker's home in the course of conducting an employer-initiated "welfare check" of the coworker. Claimant suffered emotional distress as a result of the experience. Dr. Turco, a psychiatrist, diagnosed "major depressive disorder associated with work issues" and chronic depression that was not work related. He opined that the non-work-related depression had been under control before the work incident and that claimant's current difficulties were caused by her work.

Dr. Klein, also a psychiatrist, diagnosed claimant's condition as a "complex, severe psychological stress reaction to the death of her coworker." Klein explained that, although claimant had a history of chronic anxiety and depression, she had been treated successfully for that and had been stable until the work incident. Klein acknowledged that, because of her preexisting condition, claimant was "vulnerable" to the development of the type of reaction that she had to her coworker's death. He concluded, however, that the work incident was the major contributing cause of claimant's mental condition. Employer denied the claim, and claimant requested a hearing.

In affirming the ALJ, the board analyzed the medical opinions of doctors Turco and Klein and held that claimant had established the compensability of her major depressive disorder. The board rejected employer's contention that claimant's preexisting chronic depression had contributed to her disability or need for treatment and also rejected employer's contention that claimant's major depressive disorder was the result of personal, rather than workplace, events. Employer seeks judicial review, contending that the

board erred in failing to treat claimant's preexisting chronic depression as a preexisting condition and also erred in its analysis of causation.

To establish the compensability of her major depressive disorder, claimant had to prove that employment conditions were its major contributing cause. ORS 656.802 provides, in part:

"(1)(a)  As used in this chapter, 'occupational disease' means any disease or infection arising out of and in the course of employment caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death, including:

"* * * * *

"(B)  Any mental disorder, whether sudden or gradual in onset, which requires medical services or results in physical or mental disability or death.

"* * * * *

"(b)  As used in this chapter, 'mental disorder' includes any physical disorder caused or worsened by mental stress.

"(2)(a)  The worker must prove that employment conditions were the major contributing cause of the disease.

"* * * * *

"(c)  Occupational diseases shall be subject to all of the same limitations and exclusions as accidental injuries under ORS 656.005(7).

"(d)  Existence of an occupational disease or worsening of a preexisting disease must be established by medical evidence supported by objective findings.

"(e)  Preexisting conditions shall be deemed causes in determining major contributing cause under this section.

"(3)  Notwithstanding any other provision of this chapter, a mental disorder is not compensable under this chapter unless the worker establishes all of the following:

"(a)  The employment conditions producing the mental disorder exist in a real and objective sense.

"(b) The employment conditions producing the mental disorder are conditions other than conditions generally inherent in every working situation or reasonable disciplinary, corrective or job performance evaluation actions by the employer, or cessation of employment or employment decisions attendant upon ordinary business or financial cycles.

"(c) There is a diagnosis of a mental or emotional disorder which is generally recognized in the medical or psychological community.

"(d) There is clear and convincing evidence that the mental disorder arose out of and in the course of employment."

There is no dispute that claimant suffers from a mental disorder generally recognized in the medical or psychological community. ORS 656.802(3)(c). There also is no dispute that claimant suffers from chronic depression that preexisted the work incident. Employer's challenge focuses on the board's conclusion that claimant has established that work was the major contributing cause of the mental disorder. That conclusion was dependent, in part, on the board's decision not to treat claimant's preexisting chronic depression as a preexisting condition, which employer argues was erroneous.

ORS 656.005(24)(b) defines a preexisting condition in the context of an occupational disease:

" 'Preexisting condition' means, for all occupational disease claims, any injury, disease, congenital abnormality, personality disorder or similar condition that contributes to disability or need for treatment and that precedes the onset of the claimed occupational disease, or precedes a claim for worsening in such claims pursuant to ORS 656.273 or 656.278."

Employer argues that claimant's "vulnerability," as noted by Klein, was a preexisting condition. Employer contends that, by excluding from consideration factors "which merely operated as *background components* of her depression/depressive disorder, *i.e.* the diagnosis of 'chronic dysthymic disorder,' or which merely rendered her 'vulnerable' to developing a psychological 'reaction' to adverse emotional events, the Board

operated under a definition that was legally infirm." We reject the contention.

In *Bowen v. Fred Meyer Stores*, 202 Or App 558, 563, 123 P3d 367 (2005), we explained that, in determining the major contributing cause of a condition in the context of an occupational disease claim, "the relative contribution of *all contributing causes* must be considered." (Emphasis added.) In *Bowen*, we cited our opinion in *Liberty Northwest Ins. Corp. v. Spurgeon*, 109 Or App 566, 569, 820 P2d 851 (1991), *rev den*, 313 Or 210 (1992), in which we said that "all *causes* of a disease, as opposed merely to a susceptibility or predisposition, must be considered in determining which, if any, was the major contributing cause." 202 Or App at 564 (emphasis in original). *Liberty Northwest Ins. Corp.* stands clearly for the rule that a predisposition or susceptibility that does not contribute to the occupational disease is not a bar to the compensability of an occupational disease. *See also Portland Adventist Medical Center v. Buckallew*, 124 Or App 141, 144, 861 P2d 380 (1993) (reasoning that there is a distinction between a cause of a disease and a predisposition to the development of that disease.).

In 1995, after our decision in *Liberty Northwest Ins. Corp.*, the legislature adopted a definition of a preexisting condition as "any injury, disease, congenital abnormality, personality disorder or similar condition that contributes or predisposes a worker to disability or a need for treatment and that precedes the onset of the claimed occupational disease * * *." ORS 656.005(24) (1995). That definition expressly required consideration of conditions that predispose a worker to disability or a need for treatment and would seem to have legislatively overruled *Liberty Northwest Ins. Corp.* However, the legislature amended the definition of preexisting condition in 2001 by deleting "or predisposes a worker." Or Laws 2001, ch 865, § 1.[1] Claimant cites that amendment as

---

[1] The definition of preexisting condition, as amended by Oregon Laws 2001, chapter 865, section 1, provided:

"(a) 'Preexisting condition' means, **for all industrial injury claims,** any injury, disease, congenital abnormality, personality disorder or similar condition that contributes [*or predisposes a worker*] to disability or need for treatment [*and that precedes the onset of an initial claim for an injury or occupational disease, or that precedes a claim for worsening pursuant to ORS 656.273.*], **provided that:**

conclusive evidence of the legislature's intention to exclude susceptibility from consideration as a preexisting condition.

Employer points out, however, that, in the same 2001 bill that amended the definition of a preexisting condition, the legislature added paragraph (24)(c), which states that, "[f]or the purposes of industrial injury claims, a condition does not contribute to disability or need for treatment if the condition merely renders the worker more susceptible to the injury." Paragraph (24)(c) applies only to industrial injuries. By negative implication, employer contends, the legislature intended that, in the context of an occupational disease claim, a condition that renders a worker more susceptible to injury is a condition that contributes to the disability or need for treatment. Because that is a plausible interpretation of the statute, we have examined the legislative history.

The records of the legislative proceedings clearly indicate that the amendments made to ORS 656.005(24) in 2001 were intended to eliminate a predisposition as a preexisting condition in the context of both injury and occupational disease claims. Tape Recordings, Senate Committee on Business, Labor and Economic Development, SB 485, Jan 31,

---

"(A) Except for claims in which a preexisting condition is arthritis or an arthritic condition, the worker has been diagnosed with such condition, or has obtained medical services for the symptoms of the condition regardless of diagnosis; and

"(B)(i) In claims for an initial injury or omitted condition, the diagnosis or treatment precedes the initial injury;

"(ii) In claims for a new medical condition, the diagnosis or treatment precedes the onset of the new medical condition; or

"(iii) In claims for a worsening pursuant to ORS 656.273 or 656.278, the diagnosis or treatment precedes the onset of the worsened condition.

"(b) 'Preexisting condition' means, for all occupational disease claims, any injury, disease, congenital abnormality, personality disorder or similar condition that contributes to disability or need for treatment and that precedes the onset of the claimed occupational disease, or precedes a claim for worsening in such claims pursuant to ORS 656.273 or 656.278.

"(c) For the purposes of industrial injury claims, a condition does not contribute to disability or need for treatment if the condition merely renders the worker more susceptible to the injury."

(Bracketed italics indicates deleted wording; boldface indicates new wording.)

2001, Tape 13, Side A (statement of John Shilts, Administrator, Workers' Compensation Division); Feb 2, 2001, Tape 17, Side A (statement of Kevin Mannix, attorney in private practice); *See also* Tape Recording, House Committee on Business, Labor and Consumer Affairs, SB 485, May 15, 2001, Tape 113, Side B (statement of John Shilts). In light of that clear intention, we conclude that claimant's vulnerability cannot be treated as a preexisting condition.

In its second assignment of error, employer contends that the board erred in concluding that claimant had established that her mental disorder arose out of her employment. First, employer contends that the board's order does not reflect that it applied a "clear and convincing" standard to find that claimant's work was the major contributing cause of her mental disorder.[2] However, the board rejected employer's contention that there were non-work-related events that had contributed to claimant's condition, finding that "there is no medical evidence to support the employer's argument that the stress claimant experienced resulted from a 'personal event,' rather than a 'workplace event.'" In light of the board's statement that there was *no* evidence to support employer's contention that the source of claimant's mental disorder was personal, the board did not need to say that it was applying a clear and convincing standard of proof. In any event, employer also overlooks the fact that the board affirmed and adopted the ALJ's order, and the ALJ expressly noted that the "clear and convincing" standard of proof was applicable.

Employer contends that the board erroneously relied on the medical opinion of Turco to establish that claimant's mental disorder has a sufficient legal connection to work events. Turco had claimant's full medical and social history and was aware of claimant's personal relationship with the decedent. In the summary paragraphs of his opinion, he explained:

"In summary, [claimant] has had a long term marriage (26 years), a past history of positive military service with an

---

[2] ORS 656.802(3)(d) requires that the claimant establish that "[t]here is clear and convincing evidence that the mental disorder arose out of and in the course of employment."

honorable discharge, a good work record, a good family history with regard to stability and two children who are both doing quite well. She has been able to deal not only with her job, but her husband who is disabled. She has maintained her equilibrium and my understanding is has been a responsible employee for Multnomah County.

"This woman is currently disabled and the disability relates specifically to the events associated with the death of [the deceased], as I have described in the body of this report. She is in need of substantial psychological intervention, some of which she is receiving at this time * * *[.]

"If you have any questions regarding this report, please do not hesitate to let me know. In my opinion, [claimant's] difficulties arose out of, and in the course of, her position under circumstances that were not usual and customary with regard to the work place."

(Underscoring in original.) In the diagnostic portion of his opinion, Turco opined that claimant's life outside of work was stable and that "[h]er difficulties related to current work displacement." He further opined that claimant suffered from a "major depressive disorder associated with work issues."

The board, in adopting the order of the ALJ, found:

"The evidence does not support employer's contention that it was simply the loss of [the deceased] as a friend that caused claimant's mental disorder. The manner in which claimant learned of [the deceased's] death and the circumstances of the entire course of events caused claimant's severe emotional reaction. Dr. Turco specifically related claimant's problem 'to *the events associated with* the death of [the deceased,] as I have described in the body of this report.' * * * Further, claimant testified that being sent to do the welfare check, coupled with the thought that [the decedent] may have been murdered, the unexplainable fear she felt while performing the welfare check, all while performing as a county representative, caused the circumstances to be very different than had she stayed at [the office] and just heard of [the deceased's] death.

"In light of the above circumstances, the 'arising out of' prong of the work-connection test is satisfied. Given this, there is clear and convincing evidence that the relationship

between the mental condition and claimant's employment is sufficiently close that the mental disorder should be compensable."

(Emphasis added.) The board further concluded:

"In summary, we agree with the ALJ that claimant did not have a preexisting condition that contributed to her disability or need for treatment. Moreover, there is no medical evidence to support the employer's argument that the stress claimant experienced resulted from a 'personal event,' rather than a 'workplace event.' "

Employer is critical of the board's terse summary, but neglects to consider it in the context of the ALJ's order, which the board adopted. As employer correctly notes, in order to establish that her mental disorder arose out of her employment, claimant must show that work-related stressors, as opposed to personal stressors, were the major contributing cause of her condition. *Bowen*, 202 Or App at 563. The "arising out of" component of the unitary work connection test requires "some causal link" between the injury and the employment. *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 525-26, 919 P2d 465 (1996). That link exists if employment exposes the worker to some risk from which the injury originates. *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 601, 943 P2d 197 (1997). We agree with employer that the question involves a factual inquiry into the risks of the employment, as compared with non-work-related risks, and their relationship to the injury, or as here, the disease. Citing the board's comment that there was "no medical evidence to support the employer's argument that the stress claimant experienced resulted from a 'personal event,' rather than a 'workplace event,' " employer suggests that the board mistakenly understood that aspect of causation, *i.e.*, the weighing of various stressors in claimant's life to determine which ones were the major contributing cause of claimant's mental disorder, to be a medical question. We are satisfied that the board, in affirming and adopting the ALJ's order, made the correct inquiry by considering the factual circumstances that triggered claimant's emotional reaction as well as the medical opinions analyzing the cause of that emotional reaction. We

conclude, further, that the board's order is supported by substantial evidence. We reject employer's third assignment of error without discussion.

Affirmed.