ARMSTRONG, P. J.
*207 In this petition for judicial review, we are asked to address whether the Workers' Compensation Board erred in determining that claimant's congenital bone condition in his foot known as "unfused apophysis" was not a "preexisting condition," within the meaning of ORS 656.005(24), to be considered in determining the cause of claimant's inflammatory condition known as "apophysitis." Reviewing the board's order for substantial evidence and legal error, ORS 656.298 ; ORS 183.482(7), (8), we conclude that the board did err, and we therefore reverse and remand the board's order for reconsideration.
Initially, we set out some relevant legal context. This case presents an issue of statutory construction relating to preexisting conditions in occupational disease claims. ORS 656.802 defines "occupational disease" and *1012 also states that preexisting conditions are "deemed causes in determining major contributing cause":
"(1)(a) As used in this chapter, 'occupational disease' means any disease or infection arising out of and in the course of employment caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death[.]
"* * * * *
"(2)(a) The worker must prove that employment conditions were the major contributing cause of the disease.
"* * * * *
"(e) Preexisting conditions shall be deemed causes in determining major contributing cause under this section."
ORS 656.005(24), in turn, defines "preexisting condition" for both injury and occupational disease claims:
"(24)(a) 'Preexisting condition' means, for all industrial injury claims, any injury, disease, congenital abnormality, personality disorder or similar condition that contributes to disability or need for treatment, provided that:
*208 "(A) Except for claims in which a preexisting condition is arthritis or an arthritic condition, the worker has been diagnosed with such condition, or has obtained medical services for the symptoms of the condition regardless of diagnosis; and
"(B)(i) In claims for an initial injury or omitted condition, the diagnosis or treatment precedes the initial injury;
"(ii) In claims for a new medical condition, the diagnosis or treatment precedes the onset of the new medical condition; or
"(iii) In claims for a worsening pursuant to ORS 656.273 or 656.278, the diagnosis or treatment precedes the onset of the worsened condition.
"(b) 'Preexisting condition' means, for all occupational disease claims, any injury, disease, congenital abnormality, personality disorder or similar condition that contributes to disability or need for treatment and that precedes the onset of the claimed occupational disease, or precedes a claim for worsening in such claims pursuant to ORS 656.273 or 656.278.
"(c) For the purposes of industrial injury claims, a condition does not contribute to disability or need for treatment if the condition merely renders the worker more susceptible to the injury."
(Emphasis added.) As relevant here, in the occupational disease context, a preexisting condition is one that "contributes to disability or need for treatment." We note that paragraph (24)(c), which states that a condition does not "contribute" if it "merely renders the worker more susceptible to the injury," applies only "[f]or the purposes of industrial injury claims."
The seminal case relating to proof of an occupational disease is Dethlefs v. Hyster Co. , 295 Or. 298, 310, 667 P.2d 487 (1983), in which the court held that a disease is compensable if work activities are the major contributing cause of the disease or its worsening. In Liberty Northwest Ins. Corp. v. Spurgeon , 109 Or. App. 566, 569, 820 P.2d 851 (1991), rev. den. , 313 Or. 210, 830 P.2d 596 (1992), we first drew a distinction between a preexisting condition that contributes to the cause of the disease, and a preexisting condition that is merely a predisposition or that merely renders the work *209 more susceptible but does not contribute to the cause. We held that "[a]ll causes of a disease, as opposed merely to a susceptibility or predisposition, must be considered in determining which, if any, was the major contributing cause." Id. We explained:
"An employer is responsible for a disease that a claimant who has a particular susceptibility or predisposition develops due in major part to conditions at work. The predisposition to disease is not a bar to compensability, if work causes the disease. In that sense, the employer takes the employee as it finds her."
Id.
In Portland Adventist Medical Center v. Buckallew , 124 Or. App. 141, 861 P.2d 380 (1993), we followed Spurgeon , stating that "[t]here is * * * a distinction between the cause of a disease and a predisposition to the *1013 development of that disease." Id. at 144, 861 P.2d 380. The claimant in Buckallew had diabetes-related neuropathy that caused a loss of feeling in his foot and that created a predisposition to development of a form of arthritis known as "Charcot's joint." The employer denied a claim for Charcot's joint, contending that the claimant's neuropathy was not merely a predisposition to the development of Charcot's joint but was, instead, a cause of the disease. But the board found that the medical evidence indicated that the diabetic neuropathy did not cause the condition. Rather, the major contributing cause of the condition was the microtrauma of walking at work. In upholding the compensability of the condition, we concluded that the board's findings were supported by the evidence and that the claimant's neuropathy was "but a predisposition to, and not a cause of, his Charcot's joint." Id .
The legislature first adopted ORS 656.005(24) as a definition of "preexisting condition" in 1995, in response to Spurgeon and Buckallew . See Or. Laws 1995, ch. 332, § 1. That original definition applied to both injury and occupational disease claims, and expressly required consideration of "any injury, disease, congenital abnormality, personality disorder or similar condition that contributes or predisposes a worker to disability or a need for treatment." (Emphasis added.) At the same time, the legislature adopted *210 ORS 656.802(2)(e), stating that "[p]reexisting conditions shall be deemed causes in determining major contributing cause [in an occupational disease claim]." Or. Laws 1995, ch. 332, § 56.
Then, in 2001, the legislature amended ORS 656.005(24) to delete the phrase "or predisposes a worker" from the definition of "preexisting condition." Or. Laws 2001, ch. 865, § 1. The legislature also amended ORS 656.005(24) to its current form, which defines "preexisting condition" differently for injury and occupational disease claims. In the same section of the bill, the legislature added paragraph (24)(c):
"For the purposes of industrial injury claims, a condition does not contribute to disability or need for treatment if the condition merely renders the worker more susceptible to the injury."
The legislature did not change ORS 656.802(2)(e).
In Multnomah County v. Obie , 207 Or. App. 482, 486-88, 142 P.3d 496 (2006), we had the opportunity to consider whether statutory changes since Spurgeon and Buckallew required a different analysis in the context of occupational disease claims involving preexisting conditions. The claim in Obie was for a mental disorder diagnosed as "complex, severe psychological stress reaction to the death of [a] coworker." The claimant had a history of chronic anxiety and depression that made her "vulnerable" to that type of reaction but that the board found had not contributed to her disability or need for treatment. The board concluded that, under ORS 656.005(24)(b), the claimant's preexisting chronic anxiety and depression could not be considered a preexisting condition in determining the cause of the complex severe psychological stress reaction.
The employer in Obie asked us to conclude that, because the legislature had limited the application of ORS 656.005(24)(c) to industrial injury claims but had retained the requirement in ORS 656.802(2)(e) that "preexisting conditions shall be deemed causes in determining major contributing cause" in the occupational disease context, necessarily, the claimant's preexisting condition that made her "vulnerable" (but that did not contribute to the cause *211 of a disease) was subject to consideration in assessing the cause of the mental disorder. We rejected that contention, essentially concluding that, despite the statutory changes, the rule announced in Spurgeon remained applicable in the occupational disease context. Citing the definition of "preexisting condition" in ORS 656.005(24)(b), and legislative history that we said showed an intention to eliminate "predispositions" from consideration in the occupational disease context, we held that the claimant's mere "vulnerability" could not be considered in the causation analysis. Id . at 488-89, 142 P.3d 496.[1] *1014 We have since adhered to Obie and have continued to treat Spurgeon and Buckallew as precedent. In Murdoch v. SAIF , 223 Or. App. 144, 146, 194 P.3d 854 (2008), we overturned SAIF's denial of an occupational disease claim for an infection requiring amputation of the claimant's toe. We held, citing Obie and ORS 656.005(24)(c), that the claimant's preexisting diabetic neuropathy and microvascular disease, which made him unable "to mount as strong of a response to these types of insults and these types of infections" (emphasis in original), had merely rendered him susceptible, but had not contributed to the cause of the infection that resulted in the need for amputation of the toe and was not, therefore, a "cause" for purposes of determining major contributing cause under ORS 656.802. Murdoch , 223 Or. App. at 149, 194 P.3d 854.
In Lowells v. SAIF , 285 Or. App. 161, 164-65, 396 P.3d 241 (2017), an occupational disease case, the claimant asserted that SAIF had erroneously considered the claimant's personal factors, including deconditioning, age, and weight, in determining the compensability of a claim for "chronic pain disorder." We said, citing Spurgeon and Obie , that
"the major contributing cause of a disease must be determined by a weighing of all causes, as distinct from susceptibilities and predispositions. Thus, a worker's personal factors are part of the equation, if, and only if, they are causes."
*212 Lowells , 285 Or. App. at 164, 396 P.3d 241. We upheld SAIF's denial of the claim, explaining that substantial evidence supported the board's conclusion that factors other than work were the major contributing cause of the claimant's symptoms. In a footnote, citing ORS 656.802(2)(e) and ORS 656.005(24)(b), we said that "[p]reexisting conditions that are 'causes' are also to be considered in determining major contributing cause" in the occupational disease context. 285 Or. App. at 164 n. 3, 396 P.3d 241.
We now summarize the facts of this case from the ALJ's and the board's findings, which are supported by substantial evidence. Claimant has a congenital condition in his foot known as "unfused apophysis" of the fifth metatarsal, meaning that a small bone on the outside of his foot has not fused to the metatarsal bone but is attached by fibrocartilaginous material. Claimant, who works for employer in a hospital setting, is on his feet and walks all day, except during breaks. Claimant had not previously experienced symptoms due to his apophysis, but developed pain in his foot that gradually worsened over a period of months, and that the medical experts have diagnosed as apophysitis, an inflammation of the fibrocartilaginous attachment between the pieces of the unfused apophysis. Claimant's condition could occur only because of the apophysis and the micromotions caused by the tendon tugging on the unfused fibrocartilaginous attachment between the pieces of the unfused apophysis during walking.
Dr. Loveland, claimant's treating physician, opined that a person can have apophysis for his entire life without experiencing any symptoms, and that claimant's inflammation was work related, caused by the activity of walking. Dr. Fellars conducted an examination of claimant on behalf of SAIF and concluded that claimant's work likely exacerbated claimant's symptoms but did not pathologically worsen the unfused metatarsal apophysis. SAIF denied the claim, stating that work was not the major contributing cause of the condition.
An ALJ and the board overturned SAIF's denial. The ALJ determined that Loveland's opinion was more persuasive and that claimant's work was the major contributing *213 cause of his inflammation or apophysitis. The ALJ's analysis turned on his conclusion that the apophysis was a "passive contributor" that merely made claimant more susceptible to apophysitis.
The board adopted the ALJ's order with supplementation. The board referred to Spurgeon , Obie , and Murdoch in explaining that, "in accordance with ORS 656.005(24)(c)," a condition that merely renders a claimant more susceptible to infection cannot be considered a "cause" for the purpose of determining the major contributing cause of an occupational disease. The board also cited our opinion in Corkum v. Bi-Mart Corp. , 271 Or. App. 411, 419, 350 P.3d 585 (2015), an injury case, for its discussion of *1015 the meaning of the term "susceptible," as used in ORS 656.005(24)(c). Corkum , citing legislative history, held that a condition only renders a worker more susceptible to injury for purposes of ORS 656.005(24)(c) if the condition "increases the likelihood that the affected body part will be injured by some other action or process but does not actively contribute to damaging the body part." 271 Or. App. at 422, 350 P.3d 585.
In upholding the compensability of the claim, the board here found more persuasive the medical opinion of Loveland, who stated that claimant's preexisting unfused apophysis did not cause, but only predisposed him to, an inflammation of his apophysis. The board concluded, like the ALJ, that claimant's apophysis is not a preexisting condition, because it was a "passive contributor" that did not "actively contribute" to the development of apophysitis.
On judicial review, SAIF takes issue with the board's analysis, contending that ORS 656.005(24)(c) is inapplicable in the occupational disease context.[2] Understandably, *214 SAIF is concerned that the board and this court-in Obie and Murdoch in particular-have mistakenly referred to ORS 656.005(24)(c) in cases involving occupational disease claims, when the statute's text clearly applies only to injury claims. SAIF asserts that the application of ORS 656.005 (24)(c) in the occupational disease context is inconsistent with other statutory provisions, in particular ORS 656.802(2)(e) and ORS 656.804, which SAIF contends show an intention to treat predispositions as preexisting conditions.
We are persuaded by SAIF's argument that we should not have cited ORS 656.005(24)(c) as a source for our conclusions in Obie , 207 Or. App. at 487, 142 P.3d 496, and Murdoch , 223 Or. App. at 150, 194 P.3d 854, that a susceptibility or predisposition that does not contribute to the cause of an occupational disease is not a preexisting condition. We should have separately addressed the question under the statutory context of occupational disease claims. We do so here, and we adhere to our conclusion in Obie , relying on Spurgeon , that a mere susceptibility or predisposition that does not contribute to the cause of symptoms or a need for treatment is not a preexisting condition in the occupational disease context.
As noted, ORS 656.802(1)(a) defines an occupational disease as "any disease or infection arising out of and in the course of employment caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment," and assigns to the claimant the burden to establish that employment conditions were the major contributing cause of the disease. ORS 656.802(2)(e) requires that "preexisting conditions shall be deemed causes in determining major contributing cause." Also as noted, ORS 656.005(24)(b), in turn, defines a preexisting condition in the occupational disease context as a condition that "contributes to disability or need for treatment." The definition of preexisting condition in ORS 656.005(24)(b) is applicable to ORS 656.802(2)(e). See ORS 656.003 (the definitions given in ORS chapter 656 govern unless context requires otherwise).
In Obie , as noted, we rejected the employer's contention that, in light of ORS 656.005(24)(c), the legislature's failure to similarly exclude susceptibilities from preexisting *215 conditions in the occupational disease context reflected an intention that susceptibilities are to be treated as preexisting conditions. In so concluding, we cited the definition of "preexisting condition" in ORS 656.005(24)(b), which explicitly requires that a preexisting condition contribute to the disability *1016 or need for treatment, and the legislative history of that statute, which we understood to support the conclusion that the legislature intended to exclude predispositions from consideration as preexisting conditions in the occupational disease context. SAIF notes here that some of that legislative history could be understood to address only injury claims.
We have again reviewed the legislative history and agree that it is not always clear whether testimony is addressing injury claims, occupational disease claims, or both. But we adhere to our conclusion in Obie that the legislative history nonetheless shows a clear intention that, with respect to both injury and occupational disease claims, susceptibilities that do not actively contribute to the cause of a condition are not to be weighed in determining major contributing cause. Jerry Keene, an attorney practicing workers' compensation law, had been involved in the drafting of the 1995 legislation and had closely observed the development of the 2001 amendments. He was invited by Senator Derfler and Committee Chair Corcoran to address the Senate Committee on Business, Labor, and Economic Development, and explain the intentions behind the 2001 amendments. He testified that the 2001 amendments were intended to restore Spurgeon and Buckallew ,[3] both of which involved occupational *216 disease claims. Tape Recording, Senate Committee on Business, Labor, and Economic Development, SB 485, Mar. 14, 2001, Tape 49, Side A (statement of Jerry Keene).
Contrary to SAIF's contention, other statutory provisions are not inconsistent with *1017 that intention. Both ORS 656.802(2)(e) and ORS 656.804 require application of the definition of "preexisting condition" in ORS 656.005(24)(b), which, as we have emphasized, requires that the preexisting condition "contributes to disability or need for treatment." Spurgeon established that a preexisting condition that only predisposes or makes a worker more susceptible to an occupational disease, but that does not contribute to the cause *217 of the condition, is not a part of the causation equation. In Corkum , we said, citing legislative history, that a condition only renders a worker more susceptible to injury for purposes of ORS 656.005(24)(c) if the condition "increases the likelihood that the affected body part will be injured by some other action or process but does not actively contribute to damaging the body part." 271 Or. App. at 422, 350 P.3d 585. It is true that Corkum was an injury case and addressed the meaning of the term "susceptible" as used in ORS 656.005(24)(c). But the legislative history cited in Corkum is the same legislative history on which we have relied in this opinion, and it is equally persuasive in the occupational disease context. Id . The upshot of our case law and the statutory changes since 2001 is that, in the occupational disease context, a predisposition or susceptibility may be considered in the causation analysis only if it actively contributes to the disability or need for treatment.
Whether claimant's apophysis constituted a mere susceptibility or predisposition, because it only increased the likelihood of claimant developing apophysitis and did not actively contribute to the cause of the inflammation, is a medical question. Lowells , 285 Or. App. at 165, 396 P.3d 241. The board, in adopting the ALJ's order, described Loveland's description of claimant's condition:
"She felt claimant's condition was traction apophysitis which occurs when the right peroneus brevis tendon repetitively pulls on the tissue of the apophysis which occurs with the foot lifting and moving outward as a person ambulates. She explained this micromotion causes inflammation and pain and that inflammation is a condition and status of the body and the specific pathology involved."
In a concurrence letter, Loveland agreed with claimant's counsel that
"[t]he medical condition at issue in this case is traction apophysitis. As you explained to me, the condition occurs when the right peroneus brevis tendon repetitively pulls on the fibrous tissue of the apophysis."
It is undisputed that claimant could not have developed apophysitis in the absence of the unfused apophysis and the tugging of the tendon on the fibrous tissue around the *218 unfused bone; thus, it would seem that the unfused nature of the apophysis contributed to the development of claimant's symptoms in more than a passive way. The anatomical anomaly allowed the motion of the tendon to pull on the fibrous tissues of the unfused apophysis and cause the inflammation. If claimant's unfused apophysis, combined with the micromotion of claimant's tendon pulling on the fibrous tissue when claimant walked, caused the apophysitis, then claimant's apophysis would properly be characterized as a preexisting condition under ORS 656.005 (24)(b), and a cause that must be weighed under ORS 656.802(2)(e). But Loveland also concurred in the attorney's statement that claimant's apophysis "merely made [claimant] susceptible to apophysitis." The conclusion that the apophysis merely made claimant susceptible appears to be inconsistent with the doctor's description of the mechanical cause of the inflammation.
In light of that apparent inconsistency, we conclude that the board's finding that claimant's apophysis did not itself actively contribute to claimant's disability or need for treatment is not supported by substantial reason. We therefore remand the board's order for reconsideration so that it can resolve the apparent inconsistency and apply the correct legal standard to an evaluation of the cause of claimant's apophysitis.
Reversed and remanded.

We did not at that time explicitly address ORS 656.802(2)(e).

SAIF's arguments are in part premised on its position that claimant's occupational disease claim should be analyzed as a "worsening" of a preexisting condition under ORS 656.802(2)(b), which states:
"If the occupational disease claim is based on the worsening of a preexisting disease or condition pursuant to ORS 656.005(7), the worker must prove that employment conditions were the major contributing cause of the combined condition and pathological worsening of the disease."
We do not understand the theory of compensability to be based on a worsening of a preexisting condition. Rather, the claim is for the inflammatory condition of apophysitis. In either case, the burden of proof is the same major contributing cause standard.

Jerry Keene testified:
"What this bill does is say, carve out of that definition of a preexisting condition those conditions which do not actively contribute to the disability or need for treatment involved in an active way. But instead, if they are merely predisposing factors, and the doctors think they know what they mean by those terms, they are no longer to be considered preexisting conditions * * *. Currently, the law defines preexisting conditions as traits, characteristics, asymptomatic conditions, such as age, gender, weight, history of smoking, alcohol use, abuse, family history, some congenital factors, those are all deemed preexisting conditions that don't actively contribute that still are deemed causes under the current law. Under the new law, they won't. * * * Section 1 accomplishes that change by eliminating the verb 'predisposes' from the definition of a 'preexisting condition.' * * * And the courts will deem that as significant and it was on purpose. This verb was added to the statutes to head off a line of cases in 1995 that were exemplified by [Spurgeon ] and [Buckallew ]. Spurgeon determined that predisposing factors did not constitute causes and couldn't be weighed, and Buckallew said, and you have to decide whether something is a predisposing factor or a cause in every case, case by case, with no general rule to help it out, just based on the medical evidence in each case.
"This change will take us back to the pre-1995 change and will bring back Spurgeon and Buckallew and the need to litigate the difference between predisposing factors and preexisting conditions in every case where it matters with one important difference. The language includes a phrase that was put in quite definitely on purpose. And it states, and it's a legal principle to guide the courts in trying to draw the line between preexisting conditions and predisposing factors. And that principle is that a condition does not contribute to disability or treatment if it merely renders the worker more susceptible to the injury. This is intended to draw a line and the word 'merely' is critical because it emphasizes that the distinction turns on the difference between active and passive contribution. This tells the courts that any condition or factor whose only contribution is to make the worker more susceptible to the injury, those are predisposing factors, don't weigh them. And if it does anything more they are preexisting conditions and weigh them. And that's what that phrase is for. When the courts wonder what that line is for it was to help them draw a line. And this active/passive distinction I think is the most critical one. It sets up a distinction between passive contributors such as age, gender, obesity, smoking, and active ongoing contributors to damage in the body part involved like previous injuries or diseases, degenerative conditions, diabetes, presbycusis, conditions that have their own independent active pathological impact on the body part. If they do not, if they merely render the worker more susceptible to the injury that occurred then it's a predisposing factor and should not be weighed as a cause.
"* * * The second major change in injury claims requires that a preexisting condition need to have been diagnosed before or a certain point in time or it doesn't constitute a preexisting condition that gets weighed. * * * And of course, this particular aspect applies to injury claims, not occupational disease claims."
Tape Recording, Senate Committee on Business, Labor, and Economic Development, SB 485, Mar. 14, 2001, Tape 49, Side A (statement of Jerry Keene) (emphasis added).